McBRIDE, Judge.
The automobile of Mrs. Regina Rousseau Schimpf, a 1949 Dodge sedan, was involved in a collision with the 1938 Oldsmobile sedan of defendant, which was being driven by his minor son, aged 19, at the intersection of Moss and Orleans Streets, on Sunday, February 26, 1950, at 4:00 o’clock in the afternoon. Charging that the accident resulted from several enumerated acts of negligence on the part of Vincent, III, and alleging that defendant Is responsible therefor, plaintiff, as ’the insurer of Mrs. Schimpf’s car against'the peril of collision, and as her subrogee of the amount paid to her under the insurance policy, brought this suit against Joseph Henry Vincent, II, for $158.05. Mrs. Schimpf intervened and claimed of defendant the sum of $50.00, the amount of her damage which was excepted from policy coverage. Defendant denied his son’s negligence, and alternatively pleaded that Mrs. Schimpf was guilty of contributory negligence in several particulars.
There was judgment running in favor of each claimant against defendant as prayed for, and defendant has appealed.
The cars collided about midway of the intersection formed by the- two streets, which' are both paved and accommodate two-way traffic. Moss Street, which parallels and runs along Bayou St. John, in roughly an uptown-downtown direction, intersects with Orleans Street, a wide thoroughfare, which runs from the direction of the river towards the lake. , There are certain characteristics peculiar to the intersection in question. Because of the winding course of the bayou, Moss Street is possessed of several sharp curves. Immediately after . Orleans Street emerges from its intersection with Moss Street, it runs into what is known as the Orleans Street bridge spanning the bayou, the -bridge being considerably narrower than Orleans Street. Traffic traveling out Orleans Street intending to. cross the bayou must be swerved slightly to the left, so as to be driven on the bridge. While there is a neutral ground on Orleans Street, it comes to an end about forty-five feet before reaching the Moss Street intersection.
There is no doubt that the intersection is fraught with dangerous potentialities, and to add to the- hazards there is located on the river-downtown corner a building which stands flush with the property line, creating what is colloquially known as a “blind corner’1’ as to motorists traveling towards uptown on Moss Street and those going out Orleans.
Motorists traveling in either direction on Moss Street are confronted with a stop *92 sign when reaching Orleans. ' There is also a stop sign located at the end of the neutral ground on Orleans Street, and after a motorist stops at this sign he has yet to travel forty-five feet before - reaching Moss.
Young Vincent was driving his father’s automobile towards uptown on Moss Street. Mrs. Schimpf was driving her car out Orleans towards the bridge, and seated along-r side her in the front seat was her passenger, John A. Panzeri. These persons, that is to say, the two drivers and Panzeri, were the only eyewitnesses to the accident, but oddly enough young Vincent was not called to the stand on the trial of the case.
Mrs. Schimpf and Panzeri both agreed, and we find no material variance in their testimony, that Mrs. Schimpf, after coming to a full stop in obedience to the stop sign' at the end of the neutral ground, pro.r ceeded slowly along the remaining fortyr five feet of Orleans Street, and then cautiously entered Moss Street at about five miles an hour. According to their testimony, when the car reached about the center of the intersection it was hit by the Vincent car, which was not seen by either of the witnesses when Mrs. Schimpf moved out into the intersection. Mrs. Schimpf never saw it until the moment of impact, but Panzeri, on cross examination, said that after the Schimpf car had gotten out into the intersection, he saw the Vincent car come around a curve about fifty feet away at a “terrific speed.” However, on his redirect examination, Panzeri stated that he made said statement because he' had misunderstood a question propounded by counsel, and explained that as a matter of fact he did not see the Vincent car until it was close to the intersection, and that at that time it was moving about thirty-five to forty-five miles an hour, and its driver ignored the stop sign and entered into the intersection.
Mrs. Schimpf testified that Vincent, III, at the scene of the accident, admitted that he did not stop for the sign because he was in a “hurry to get home * * * before his father returned.”
The" testimony of the plaintiff witnesses is unrefuted. Young Vincent, according to the record, was present in the court throughout the trial, and not only did defendant’s counsel not see fit to bring him forward as a witness, but counsel objected to plaintiff’s attorney calling him for cross examination. The trial judge sustained the objection and refused to permit cross examination. There is a familiar rule of law that where a litigant fails to produce a material witness without explanation of the reason therefor, the presumption arises that had the witness been produced his testimony would have been' unfavorable to the litigant. We think that under the facts and circumstances involved in this case, the rule is to be invoked with added force, for here we have not only a failure to produce a witness, but a failure to allow a witness to' testify, although the witness was present in court and heard the adverse testimony against him. . The defendant was fortunate if he had a valid defense to this suit, but he was indeed unfortunate when he failed to produce -the only witness who could have proved.it;
Counsel postulates both in brief and in oral argument that he did not deem it necessary to have Vincent, III, sworn as a witness, because a written statement which the young man had 'given to an adjuster for plaintiff a few days after the accident was called .for, offered, and received in evidence on behalf of defendant. The statement referred to is contained in the record, and we are urged to accord the recitals of the document the same weight as though Vincent, III, had made the statements under oath from the witness stand. We cannot give any weight whatever to the written statement, which in our opinion is totally without. probative value, for a party should not be allowed to make evidence for himself by introducing ex parte declarations in. his favor made by another. Such statements, .oral or written, made put of court, are banned under the hearsay rule. Winter v. Gani, La.App., 199 So. 600; see *93 also Stovall v. Thomas Lumber Co., La.App., 189 So. 379.
Defendant’s attorney makes much ado regarding certain physical evidence. The testimony shows that the front end of the Schimpf car was damaged. Photographs filed in evidence on behalf of defendant show that the damage to his car was in the vicinity of the left rear wheel. Counsel argues that the location of the damage to the automobiles destroys the verity of the testimony of'plaintiff’s witnesses, and demonstrates that contrary to what the witnesses stated, it was the Schimpf car which hit the car of defendant. We attach no' importance to that feature of the case, because Mrs. Schimpf and her passenger, Panzeri, made plausible explanations. They both said that Young Vincent drove his car directly in front of the Schimpf car and then swerved sharply to his left as though to enter Orleans Street, with the result that the left rear portion of the car he was driving struck and then scraped along the front part of the other car. Our examination of the photographs discloses that defendant’s automobile was not hit, but rather there was a scraping or sideswiping of the metal in the vicinity of the left rear wheel, which circumstance tends to corroborate the testimony of the witnesses.
Defendant’s automobile, at the time of the accident, was being operated by his' minor son, who resides with him, and, therefore, defendant is answerable for his negligence. It is not necessary to discuss all of the charges of negligence made against young Vincent — suffice it to say that he was guilty of at least two of the charges, viz., he operated his automobile at a speed in excess of that established by Ordinance No. 13,702, C.C.S., which regulates the movement of traffic in New Orleans, and he entered the intersection without heeding the stop sign erected and maintained on the corner by the officials of the city. Ample evidence sustains the damage of $208.05 which was inflicted upon the Schimpf car.
For the reasons assigned, the judgment appealed from is- affirmed.
Affirmed.